

| | U.S. Department of Justice |
|---|---|
| | *United States Attorney*<br>*Eastern District of New York* |
| MRM:BTK/AT<br>F. #2018R01102 | *610 Federal Plaza*<br>*Central Islip, New York 11722* |

April 19, 2024

By ECF

The Honorable Joan M. Azrack
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, NY  11722

      Re:  United States v. Hui Qin, also known as
      "Qin Hui," "Hui Quin," "Muk Lam Li"
      and "Karl," 24-CR-100 (JMA)

Dear Judge Azrack:

      The government writes in connection with the defendant's May 9, 2024 sentencing.  On March 18, 2024, the defendant pleaded guilty to a three-Count Information that charged him with Making Campaign Contributions in the Names of Others, Immigration Fraud and Production of a False Identification Document.  See Apr. 8, 2024 U.S. Dep't of Probation ("Probation), Presentence Investigation Report ("PSR") at ¶¶ 1-4 (on file with Court).  Since his October 2, 2023 arrest, the defendant has been incarcerated at the Metropolitan Detention Center.  Id. at ¶¶ 55, 61.

      The PSR determined that the defendant's advisory United States Sentencing Guidelines range was 8-14 months' imprisonment and Probation recommended a sentence of time-served with two years' supervised release, including the Special Conditions that the defendant "cooperate and abide by all instructions of immigration authorities" and that the defendant "not illegally reenter the United States without permission."  See Apr. 8, 2024 Probation Recommendation ("Recc.") at 1 (on file with Court).  In keeping with the parties' Plea Agreement, the government joins in Probation's recommendation and further requests that the Court impose, as a Special Condition of supervised release, that the defendant execute all forms necessary to relinquish his fraudulently-obtained Lawful Permanent Residence ("LPR") status on the date of sentencing and that—also on date of sentencing—he be transported by federal agents to an airport, where he will be removed from the United States on a flight to a place located outside of the territorial jurisdiction of the United States, other than the People's Republic of

China ("PRC").[1]  The government respectfully submits that such a sentence would be "sufficient, but not greater than necessary," under the relevant statutory factors.  See 18 U.S.C. § 3353(a).

## FACTS

Beginning in approximately June 2018, the Federal Bureau of Investigation working in conjunction with the Internal Revenue Service-Criminal Investigation and U.S. Citizenship and Immigration Services ("USCIS") conducted an investigation of the defendant which revealed that, from around April 2019 to March 2022, the defendant repeatedly committed fraud-related crimes.  See PSR at ¶¶ 2-4.

In particular, the investigation demonstrated that, in connection with his April 2019 LPR application, the defendant concealed his use of the alias "Muk Lam Li" (the "Li alias") PSR at ¶¶ 13-14. [2]  Although the defendant had purchased that alias from a PRC government official in 2008, obtained various forms of identification—bearing his photograph and a different birthdate—using the Li alias and used the Li alias to transfer around $5 million from bank accounts in Hong Kong to bank accounts in the United States to finance the purchase of luxury apartment for him and his ex-wife, the defendant filed an LPR application and falsely stated, under penalty of perjury, that he had not used any "other names."  Id. at ¶ 14.  About a year before his fraudulent LPR application, March 2018, the defendant directed his ex-spouse to similarly file a false LPR application on his behalf, also stating falsely, under oath, that the defendant had not used "other names."  Id.  Based upon these false statements, in June 2019, USCIS granted the defendant LPR status, which he has agreed to relinquish as part of his Plea Agreement.  Id.

---

[1] As part of his Plea Agreement, the defendant signed an incomplete United States Citizenship and Immigration Services ("USCIS") Record of Abandonment of LPR Status ("Form I-407").  The Plea Agreement requires the defendant to complete the Form I-407 and "to arrange for his travel to a country outside the territorial jurisdiction of the United States and to be escorted to an airport in the United States by federal agents."  On April 17, 2024, defense counsel confirmed that they agreed that the Court should impose the government's requested Special Conditions.

[2] The government's investigation also uncovered other facts related to the defendant's use of the Li alias to travel aboard private aircraft and information concerning litigation related to judgments entered against the defendant, the issuance of an August 2023 Civil Contempt Order against him by the United States District Court for the Southern District of New York, his use of an ax to attempt to break into a closet that his ex-wife secured with an electronic lock in the residence that they shared and other matters that are described in the government's October 2, 2023 Letter in Support of a Permanent Order of Detention (the "Detention Letter"), which the Court issued that day (ECF No. 5).  To the extent that the defendant's sentencing submission discusses these matters, the government will not comment further upon them here because they are not germane to the present sentencing.  Nonetheless, the government stands behind the facts set forth in its Detention Letter.

In December 2020, about six months after he fraudulently obtained LPR status, the defendant travelled from New York to Florida to defraud the Florida Department of Highway Safety and Motor Vehicles ("FLHSMV") into issuing him a Florida Driver's License. PSR at ¶ 15. To do this, the defendant not only filed a false application with FLHSMV stating that he resided at a Miami address when, in fact, he never lived there, but he also provided FLHSMV with fake statements from Bank of America and Macy's that were purportedly sent to him at his false Miami address. Id. Despite these blatant falsities, the defendant signed his FLHSMV Driver's License application, under penalty of perjury, and attested that all information in it was "true and correct." Id. Based upon his lies, FLHSMV issued the defendant a Florida Driver's License, which he used as identification in banking and insurance transactions, following his return to his actual residence in New York. Id.

Having fraudulently secured LPR status and an out-of-State Driver's License, the defendant turned his attention to political campaigns. Between December 2021 and December 2022, the defendant worked with other co-conspirators to make contributions to three political campaign committees in the names of other individuals. PSR at ¶ 9. Essentially, the defendant agreed to reimburse these individuals for making "straw donor" contributions on his behalf. Id.

In December 2021, the defendant engaged in audio message communications with a Co-conspirator who agreed to obtain around $20,000 in straw donor contributions. Thereafter, between December 2021 and December 2022, as part of the conspiracy, the defendant caused: a $1,000 straw donor contribution to be made to a New York City Political Official, who held a citywide political office ("New York City Public Official 1"); $8,700 in straw donor contributions to be made to two campaign committees for a United States Congressman who represented a Congressional District within the Eastern District of New York ("United States Representative 1"); and a $2,900 straw donation to be made to the campaign committee for a candidate for a United States House of Representatives seat for a Congressional District in Rhode Island ("Candidate 1"). Id. at ¶¶ 9-10.

## SENTENCING GUIDELINES

Although the Probation calculated the defendant's advisory Sentencing Guidelines range as 8-14 months' imprisonment, PSR at ¶¶ 81-82, consistent with the parties' Plea Agreement, Probation recommended that the defendant be sentenced to time-served, along with two years' supervised release with the above noted Special Conditions. See Recc. at 1. Because the defendant agreed in his Plea Agreement to relinquish his LPR status and to be removed from the United States, the government agrees that a time-served sentence is appropriate provided that the defendant is removed from the United States on the date of sentencing, a consequence that defense counsel also agrees is appropriate.

## THE REQUESTED SENTENCE IS APPROPRIATE

A. Legal Standard

In United States v. Booker, the Supreme Court held that the Guidelines are advisory and not mandatory, and the Court made clear that district courts are still "require[d] . . . to consider Guidelines ranges" in determining sentences, but also may tailor the sentence in light

of other statutory concerns. 125 S. Ct. 738, 743 (2005); see 18 U.S.C. § 3553(a). Subsequent to Booker, the Second Circuit held that "sentencing judges remain under a duty with respect to the Guidelines . . . to 'consider' them, along with the other factors listed in section 3553(a)." United States v. Crosby, 397 F.3d 103, 111 (2d Cir. 2005). Although the Court declined to determine what weight a sentencing judge should normally give to the Guidelines in fashioning a reasonable sentence, the Court cautioned that judges should not "return to the sentencing regime that existed before 1987 and exercise unfettered discretion to select any sentence within the applicable statutory maximum and minimum." Id. at 113.

Later, in Gall v. United States, the Supreme Court elucidated the proper procedure and order of consideration for sentencing courts to follow: "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." 552 U.S. 38, 49 (2007) (citation omitted). Next, a sentencing judge should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [the Court] may not presume that the Guidelines range is reasonable. [The Court] must make an individualized assessment based on the facts presented." Id. at 49-50 (citation and footnote omitted).

B. Argument

The government respectfully submits that a sentence of time-served, which at this time is over six months spent in custody, along with two years' supervised release and other Special Conditions that effectuate the defendant's immediate and permanent removal from the United States appropriately accounts for the "nature and circumstances of the offense" and that "reflect[s] the seriousness of the offense . . . promote[s] respect for the law, and . . . provide[s] just punishment for the offense." 18 U.S.C. § 3553(a)(1)-(2)(A). Such a sentence will also promote specific and general deterrence. See id. at § 3553(a)(2)(B).

Between 2019 and 2022, the defendant repeatedly engaged in fraudulent conduct. Collectively, his actions demonstrate that he is unfit to remain in the United States. Despite his using the Li alias—which he purchased from a PRC government official in 2008—for more than a decade to, among other things, transfer $5 million to the United States in 2017 so that he could purchase a luxury apartment and to obtain various forms of identification bearing his likeness and a different birthdate, the defendant brazenly filed, under penalty of perjury, an LPR application where he falsely stated that he had never used "other names." Not only did the defendant lie, he directed his ex-wife to file a similarly false LPR application on his behalf to keep up his charade. As the defendant correctly concedes, telling USCIS officials that he extensively used an alias that he bought from a PRC official "would not help him in his application for U.S. residency." See Def.'s Sent. Ltr. at 9 (ECF No. 47).

Not content to flout the federal immigration system, the defendant then travelled from New York to Florida and defrauded the FLHSMV with phony documents, purporting to show that he lived at a Miami address where he never resided. Here again—displaying contempt for the truth and rule of law—the defendant signed a false application, swearing falsely that his known lies were "true and correct."

4

The defendant's foray into the United States political system was no less fraudulent. Here, he worked with others to direct straw donations to his preferred candidates without disclosing the true source of this funding.

Against this backdrop, the defendant has rightly recognized that he should be removed from the United States. To that end, the government respectfully requests that the Court sentence the defendant to time-served and two years' supervised release, with the Special Conditions recommended by Probation. And the government further requests that the Court impose a Special Condition requiring the defendant to relinquish his LPR status by completing the Form I-407 at sentencing and immediately prior to his departure from the United States. The Court should also require that the defendant be transported from the courthouse to an airport in the custody of federal agents immediately after his sentencing to ensure his expeditious removal from the United States.

Although not required, a supervised release term of two years would be an added deterrent in this case, and it should be imposed despite the defendant's immediate removal from the United States following sentencing. Under the Sentencing Guidelines the "court ordinarily should not impose a term of supervised release in a case in which supervised release is not required by statute and the defendant is a deportable alien who likely will be deported after imprisonment." U.S.S.G. § 5D1.1(c). But comment 5 to Guideline 5D1.1(c) further states that:

> The court should . . . consider imposing a term of supervised release on such a defendant if the court determines it would provide an added measure of deterrence and protection based on the facts and circumstances of a particular case.

U.S.S.G. § 5D1.1(c) cmt. n.5.

Although the defendant will be removed immediately following sentencing, his repeated fraudulent conduct demonstrates that a two-year period of supervised release is necessary to adequately deter him from attempting to illegally reenter the United States under false pretenses. Cf. United States v. Garcia, 508 Fed. Appx. 79, 83 (2d Cir. 2013) (three years' supervised release, in addition to 72 months' incarceration was appropriate because the district court found that the defendant "had already illegally returned to the country once and it doubted [his] ability to 'contain himself' from doing so again."); see also United States v. Azcona-Polanco, 865 F.3d 148, 154 (3d Cir. 2017) (affirming a term of supervised release because of a defendant's serious criminal history, previous deportations and multiple illegal reentries).

## CONCLUSION

    For the foregoing reasons, the government respectfully requests that the Court impose a sentence of time-served and two years' supervised release, along with the Special Conditions requested by Probation and the additional Special Conditions that the defendant fully execute the Form I-407, relinquish his LPR status, surrender his LPR card to the government and be immediately removed from the United States, following his sentencing, under the custody of federal agents.

                Respectfully submitted,

                BREON PEACE
                United States Attorney

       By:  /s/
           Bradley T. King
           Adam R. Toporovsky
           Assistant U.S. Attorneys
           (631) 715-7900


cc:  Henry Mazurek, James Miskiewicz & Benjamin Xue, Esqs. (by ECF and E-mail)
    United States Probation Officer Steven Guttman (by E-mail)